GEORGE R. KIMBLE, Respondent, v. MAUDE R. McDERMOTT et al., Appellants.

**Kansas City Court of Appeals, January 30, 1911.**

1. REPLEVIN: Possession by Agent: Unauthorized Acts. Where the defendant, assuming to act as the agent of his wife, wrongfully detained the plaintiff's wagon, claiming the hay thereon under the terms of his wife's lease with plaintiff, he was personally liable in an action of replevin. His possession was not in good faith, because his acts were characterized by a wanton disregard of plaintiff's right, and hence were not within the contemplation of his agency.

2. ———: ———: Evidence. Evidence that on the date the writ was issued the wagon was standing, with no change in its location, in the lot where its original detention occurred is sufficient evidence that defendant was in possession of the property on said date.

Appeal from Bates Circuit Court.—*Hon. C. A. Denton,* Judge.

AFFIRMED.
154 App—14

*Thomas J. Smith* for appellants.

*J. S. Brierly, C. W. Sloan & D. C. Chastain* for respondent.

BROADDUS, P. J.—This is a suit in replevin instituted in a justice court. An appeal was taken from the judgment of that court to the circuit court where on trial anew the plaintiff recovered and the defendant Ed McDermott appealed.

It appears from the evidence that Mrs. McDermott was the owner of a farm in Cass county, which she leased for a time to plaintiff. Among the stipulations in the lease, it was provided that plaintiff should cut the first crop of hay produced on the farm in proper season, care for it properly, and deliver in alternate loads direct from the field the one-half by weight to the lessor on her premises as directed. Mrs. McDermott after the making of the lease had scales for weighing erected on her farm but not upon that part leased.

About the 23d of June, 1910, plaintiff began the delivery of the hay mentioned after having it weighed upon said scales. The defendant, Edward McDermott, acted as the agent of his wife in receiving the hay. These deliveries were continued from time to time until on or about the 2d day of July, when plaintiff brought two loads, one for himself and one for Mrs. McDermott, which defendant weighed. Later in the day plaintiff brought two other loads for weighing and delivery, while defendant was absent, but coming soon afterwards plaintiff complained at being delayed, whereupon defendant said that if plaintiff did not give him notice when he was going to make a delivery, he might go to Coleman or somewhere else and weigh the hay.

On the following day both Mrs. McDermott and

defendant were away from home, for which reason plaintiff had two loads weighed at Coleman, one of which was delivered in Mrs. McDermott's barn. On the next day plaintiff with his hired man came to de-liver another load of hay in the barn. The defendant told the man to drive on the scales and weigh. The man stopped and said: "The hay has been weighed." Defendant then said: "Drive on and weigh or furnish me the evidence of the weight." At this time plaintiff who had opened the gate leading to the barn directed his man to unload, at which defendant again asked him to drive on the scales and weigh or furnish evidence of weight. It was shown that the hired man said he had weighed the load at Coleman and had not yet weighed the wagon. Defendant then said: "You can't unload the hay into the barn until you weigh it or furnish me the evidence of weight." Defendant procured a lock and got to the gate before the driver did and locked it, and said: "You can't take the wagon and hay out."

Defendant testified that plaintiff said to his man, "drive out John," and he started the team towards the gate, that he said to plaintiff: "The contract don't allow you to take that hay out of here, and you have got to leave that here," that he then stepped back to the scales and got a lock and locked the gate; that then plaintiff told his man to unhook, as he wanted to take the team out; that he then said to plaintiff: "All right, all we want is the hay;" and that he told plaintiff he only wanted the hay and that he did not want the team and wagon.

This suit was instituted on the 5th of July. The return on the writ does not show that the property was taken from the possession of the defendant, but the evidence shows that it was in the same place where it was left on the 3d of July, two days before, and that

the hay ws unloaded into the barn after the constable took possession of the wagon.

On the pleadings and evidence under the direction of the court the jury returned a verdict for plaintiff and assessed his damages at one cent.

It is insisted by appellant, as the undisputed facts show that defendant was acting in receiving the hay as the agent of his wife, and his acts being within the scope of his agency, he was not personally liable for them.

It is held that: "When an officer wrongfully levies upon the property of a stranger, he is the proper party defendant in an action of replevin even though the property levied upon be left with a third person as bailee." [Talbot v. Magee, 59 Mo. App. 347.]

In a case where the defendants were the attorneys endeavoring to collect a claim against plaintiff, they recovered a judgment on the claim and had it secured by a chattel mortgage on a lot of brick; and had the sheriff to take possession of the brick for their client, and bring them to a place designated by the latter, and piled up outside of any inclosure for their client, it is held, that they did not render themselves personally liable for honest and legitimate service for their client. [Myers v. Lingenfelter & Hudson, 81 Mo. App. 251.] In Talbot v. Magee, supra, the doctrine is also announced that: "Any person having the unlawful possession of personal property belonging to another is the proper party from whom to replevy it whether he claims as owner, agent, custodian, trustee or in another capacity." But the agent is not liable if his possession is in good faith. Such is the general rule. [Cobbey on Replevin, sec. 431.] Under the circumstances of this case the defendant's act was characterized by a wanton disregard of the rights of the plaintiff, and not within the contemplation of his agency; and as such his possession was not in good faith.

It is further contended that there was no evidence that defendant was in possession of the property on the date when the writ was issued, therefore the plain- tiff was not entitled to recover. But appellant is mis- taken. The wagon was standing in the lot where it was left two days previously, and as there had been no change in its location, there could have been no actual change in such possession, or that any other person was detaining it. Upon defendant's own testi- mony his act was tortious and unjustifiable and plain- tiff had no peaceable remedy, other than a resort to the courts. Finding no error the cause is affirmed. All concur.